[No. B177462. Second Dist., Div. Six. Oct. 26, 2005.]

WAYNE FISHBACK et al., Plaintiffs and Appellants, v.
COUNTY OF VENTURA, Defendant and Respondent.

898

**COUNSEL**

Kate M. Neiswender for Plaintiffs and Appellants.

Noel A. Klebaum, County Counsel, and Linda K. Ash, Assistant County Counsel, for Defendant and Respondent.

**OPINION**

**GILBERT, P. J.**—What is a legal subdivision according to the Subdivision Map Act (SMA) as it existed in the 1930's and 1940's? The answer to this esoteric question has profound consequences today.

The SMA defined a subdivision as a division of land into five or more parcels in any one-year period. We conclude that on the creation of a fifth parcel within a one-year period, the previous four parcels created during that same one-year period are a subdivision. We also conclude that lands retained by the subdivider are parcels within the definition of a subdivision. We affirm.

FACTS

*Early History*

On March 27, 1940, Nathan and Augusta Wolfe conveyed to the LA-Ventura Land Co. (LA Land) a 140-acre parcel in an unincorporated area of Simi

Valley in Ventura County (parent parcel). In September of 1940, LA Land recorded a survey of the southern portion of the parent parcel. The survey purported to divide the southern portion of the land into 15 parcels.

Beginning September 7, 1940, and ending August 16, 1941, LA Land conveyed 10 parcels from the parent parcel to various grantees. The conveyances left LA Land with four parcels. Thus the conveyances carved 14 parcels from the parent parcel.

In May of 1943, LA Land conveyed a portion of a retained parcel to Harry Kahn, who in turn divided the land into four parcels. In March of 1951, LA Land conveyed a portion of one of its retained parcels in the unsurveyed northern part of the parent parcel, and did the same in October of 1957.

### More Recent History

Eventually, 12 of the parcels including two carved from the northern part of the parent parcel and the four Kahn parcels were acquired by George and Evelyn Meltzer. In short, the Meltzers purchased a potpourri of parcels, some of the original 10 conveyances and others later conveyed from the retained parcel.

In December of 2001, the Meltzers applied to the County of Ventura (County) for certificates of compliance for all 12 parcels. The Meltzers claimed that the parcels were legal under the SMA as it was written when the parcels were created. Their claim was based on two theories: that the 1940 recorded survey created legal parcels; and that the conveyances from the parent parcel created legal parcels under the "annual quartering exception" to the definition of a subdivision.

The county surveyor determined that two of the 12 parcels were legal, and the County issued certificates of compliance for those parcels. The County now believes that those certificates were issued in error, but does not contest their issuance. The County determined that the other 10 lots are illegal as violative of the SMA.

### The Present

Wayne and Carol Fishback are holders of an option to purchase the Meltzers' parcels. They petitioned the superior court for a writ of administrative mandate. The Fishbacks sought, among other relief, an order requiring the County to issue certificates of compliance for the 10 parcels. The Fishbacks also challenged a County ordinance requiring an additional application and fee in order to obtain a conditional certificate of compliance. The

ordinance also allows the County to require a survey and maps to obtain a conditional certificate. The Fishbacks believe the ordinance was preempted by state law.

The trial court denied the petition. The court found that the recorded survey did not create a legal subdivision;[1] the annual quartering exception did not apply; the County's ordinance regarding conditional certificates of compliance does not conflict with state law; and the challenge to the ordinance is barred by the statute of limitations.

## DISCUSSION

### I

The Fishbacks contend the parcels in question were legally created through the "annual quartering exception" to the definition of subdivision.

◼ The SMA prohibits the sale, leasing or financing of parcels of land without complying with the act. (See Gov. Code, § 66499.30, subds. (a)–(c).)[2] Section 66499.30, subdivision (d), creates an exception to the compliance requirement. It provides that the prohibition does not apply to any parcel that was sold or leased, or offered or contracted for sale or lease "in compliance with or exempt from any law (including a local ordinance), regulating the design and improvement of subdivisions in effect at the time the subdivision was established." (*Ibid.*) Section 66499.30, subdivision (d), is a grandfather provision of the SMA. (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 999 [129 Cal.Rptr.2d 869, 62 P.3d 103].) It protects subdivisions that either already were approved by local agencies, or were deemed exempt under previous subdivision laws in effect at the time the subdivisions were established. (*Id.* at p. 1000.)

◼ An owner of a parcel or his vendee may request a local agency to determine whether the parcel complies with the subdivision laws. (§ 66499.35, subd. (a).) If the local agency determines that the parcel does comply, it must record a certificate of compliance. (*Ibid.*)

◼ The local agency's decision to deny certificates of compliance is reviewable by petition for writ of administrative mandate. (See *Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970 [191 Cal.Rptr. 415].) The question for the trial court and for us on appeal is the same: whether the local agency's

---

[1] On appeal, the Fishbacks have abandoned their contention that the recorded survey created a legal subdivision.

[2] All statutory references are to the Government Code unless otherwise stated.

decision is supported by substantial evidence. (*Ibid.*) The burden is on appellant to show there is no substantial evidence to support the decision. (*Ibid.*) But here there is little or no dispute about the evidence. Instead, the focus of the dispute is on the meaning of statutes. ■ Statutory construction is a question of law which requires the exercise of our independent judgment. (*Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 [280 Cal.Rptr. 535].)

The parties agree that the transactions in question were governed by the 1937 and 1943 versions of the SMA. They also agree that as relevant here there is no substantial difference between the two versions of the act.

The 1937 and 1943 acts defined "subdivision" as "any land or portion thereof, shown on the last preceding tax roll as a unit or as contiguous units, which is divided for the purpose of sale, whether immediate or future, by any subdivider into five or more parcels within any one year period." (Stats. 1943, ch. 668, § 1, p. 2423; see Stats. 1937, ch. 670, § 2, p. 1864.) Because the definition of subdivision required a division of a unit of land into five or more parcels in any one year, a division of a parcel into four or fewer parcels within a year was not governed by the act.[3] This is what the Fishbacks refer to as the "annual quartering exception."

■ Here the evidence shows that in a period of less than one year, from September 7, 1940, to August 16, 1941, LA Land conveyed 10 parcels from the parent parcel. The 10 conveyances broke up the parent parcel so as to create 14 parcels, including four parcels left in possession of LA Land.

The Fishbacks argue that under the annual quartering exception, the first four parcels conveyed are legal. But the SMA defined a subdivision as a division of a unit of land into five or more parcels in any one-year period. Once the fifth parcel is created within a one-year period, all the parcels created within that year constitute a subdivision. The plain language of the statute allows no other reasonable interpretation.

The Fishbacks also argue that the portions of the parent parcel that LA Land retained after making the 10 conveyances are not parcels within the definition of a subdivision.

Currently, section 66424.6, subdivision (a), allows a subdivider of a portion of a unit of land to designate a remainder parcel. The designated remainder is not counted as a parcel for the purpose of determining whether a parcel or

---

[3] Prior to 1972, the SMA did not require a parcel map for a division of land into less than five parcels. (See Stats. 1971, ch. 1446, § 5, p. 2854, eff. Mar. 4, 1972.)

final map is required. But the section was added in 1979. (Stats. 1979, ch. 383, § 1, p. 1441.) The Fishbacks point to no similar statute in existence at the time the parent parcel was subdivided.

█ The Fishbacks rely on the phrase, "or portion thereof," as used in the definition of a subdivision. But the phrase simply clarifies that an entire parcel does not have to be divided in order to qualify as a subdivision. Thus a party who acquires only a portion of a unit of land as shown on the tax rolls, cannot claim the right to subdivide without complying with the SMA. When the Legislature intended to exclude remainder parcels, it clearly said so. (§ 66424.6, subd. (a).) The phrase "or portion thereof" cannot reasonably be interpreted to mean that land retained by a subdivider does not count as a parcel.

█ The Fishbacks also rely on the phrase, "for the purpose of sale." They argue the retained land was not divided for the purpose of sale. But the phrase, "for the purpose of sale," modifies "unit" or "contiguous units" of land. A unit of land is one shown on the "last preceding tax roll as a unit." If a "unit" or "contiguous units" of land are divided for the purpose of sale, it is irrelevant that the retained parcel is not held for the purpose of sale. Thus, for example, if the owner of a unit of land divides it in half, the unit is divided for the purpose of sale even if the owner intends to sell only one half and keep the other.

The Fishbacks' reliance on *Subdivision of Contiguous Real Property*, 52 Ops.Cal.Atty.Gen. 79 (1969), is misplaced. There the Attorney General assumed the following facts: The owner of a contiguous tract of property filed a valid subdivision map dividing a portion of the property into eight parcels. The portion of the property that was not included in the map was not intended for sale, lease or financing at the time the map was filed. Later, the owner of the retained parcel decided to divide it into less than five parcels for the purpose of sale lease or financing.

The Attorney General opined that the retained lot did not require a subdivision map. In so determining, the Attorney General stated: "[I]nsofar as an individual makes a division of a portion of contiguous real property, and, at the time the division is made, does not have an intent to divide for the purpose of sale, lease, or financing, any other part of such real property, that division should not be considered in determining whether or not a future division is a subdivision within the meaning of [Business and Professions Code] section 11535. The sole factor in determining whether prior divisions should be considered is the intent of the individual at the time the prior division is made." (*Subdivision of Contiguous Real Property*, 52 Ops.Cal.Atty.Gen. 79, *supra*, at p. 82.)

■ The flaw in the Attorney General's reasoning is the assumption that the intent to sell, lease or finance must apply to each parcel created by the division of a unit of land. The definition of subdivision applies if a unit or a portion of a unit of land is divided for the purpose of sale. Thus, as the previous example illustrates, a unit may be divided for the purpose of sale, even if the owner intends to sell only some of the parcels created by the unit's division.

Here it is undisputed that the parent parcel constituted a unit of land as shown on the tax rolls prior to its division. The entire unit was divided into 14 parcels by the sale of 10. Thus the unit was divided for the purpose of sale. It is irrelevant that the owner may not have had the intent to sell all of the parcels in the unit.

The Fishbacks argue that, if nothing else, the four parcels created by Harry Kahn are valid.

But LA Land conveyed an illegal parcel to Kahn. It was part of an illegal subdivision created when LA Land conveyed 10 lots from the parent parcel within a year. In effect, the Fishbacks argue that four legal parcels can be created by dividing an illegal parcel.

The Fishbacks point out that a unit of land is defined as a unit as shown on the last tax roll preceding the division. But that does not mean the unit shown on the last preceding tax roll is a legal parcel. There is simply nothing in the definition of a subdivision that allows the creation of legal parcels by dividing an illegal parcel.

Nor does the conclusive presumption of section 66412.6, subdivision (a), apply. The subdivision provides: "For purposes of this division or of a local ordinance enacted pursuant thereto, any parcel created prior to March 4, 1972, shall be conclusively presumed to have been lawfully created if the parcel resulted from a division of land in which fewer than five parcels were created and if at the time of the creation of the parcel, there was no local ordinance in effect which regulated divisions of land creating fewer than five parcels."

■ March 4, 1972, is the effective date of legislation adding the requirement of a parcel map to the SMA for divisions of land into four or fewer parcels. (Stats. 1971, ch. 1446, § 5, p. 2854; *Review of Selected 1980 California Legislation* (1980) 12 Pacific L.J. 556.) Section 66412.6, subdivision (a), simply clarifies that parcels legally created without a parcel map are legal even after the parcel map requirement was added to the SMA. The statute does not legalize illegally created parcels. The statute requires that

"the parcel resulted from a division of land in which fewer than five parcels were created . . . ." (§ 66412.6, subd. (a).) Here the four Kahn parcels resulted from the parent parcel's division into 14 parcels.

The Fishbacks' reliance on *Lakeview Meadows Ranch v. County of Santa Clara* (1994) 27 Cal.App.4th 593 [32 Cal.Rptr.2d 615], is misplaced. There the court held that the owner of three parcels created prior to the enactment of the SMA was entitled to certificates of compliance. In so holding, the court relied on section 66412.6, subdivision (a). But in contrast to the Kahn parcels, none of the three parcels under consideration in *Lakeview* resulted from an illegal division of land.

The Fishbacks argue that the County does not explain why it issued certificates of compliance for two parcels. But the County explained that on further review it concluded it issued those certificates in error. That the County is not now contesting the issuance of those certificates is irrelevant.

II

The Fishbacks contend the County was obligated to issue conditional certificates of compliance without an additional application or fee or additional surveys or maps.

Section 66499.35, subdivision (b), provided in part: "If a local agency determines that the real property does not comply with the provisions of this division or of local ordinances enacted pursuant to this division, it shall issue a conditional certificate of compliance. . . . Upon making the determination and establishing the conditions, the city or county shall cause a conditional certificate of compliance to be filed for record with the recorder of the county in which the real property is located. The certificate shall serve as notice to the property owner or vendee who has applied for the certificate pursuant to this section, a grantee of the property owner, or any subsequent transferee or assignee of the property that the fulfillment and implementation of these conditions shall be required prior to subsequent issuance of a permit or other grant of approval for development of the property. [¶] Compliance with these conditions shall not be required until the time that a permit or other grant of approval for development of the property is issued by the local agency."

The Fishbacks argue that an ordinance under which the County requires an additional fee, a second application and surveys and maps prior to issuing a conditional certificate is preempted by section 66499.35, subdivision (b). They claim the County has no choice but to issue a conditional certificate upon rejection of the property owner's application for a certificate of compliance. (Citing *Hunt v. County of Shasta* (1990) 225 Cal.App.3d 432, 438 [275 Cal.Rptr. 113].)

But the trial court found the Fishbacks' claim of preemption was barred by section 66499.37. That section provides in part: "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations."

In arguing the statute of limitations does not bar their challenge to the ordinance, the Fishbacks rely on *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 [16 Cal.Rptr.3d 404, 94 P.3d 538]. There the County passed an ordinance allowing property owners to construct affordable second dwelling units on their property. The ordinance required that permits for such units must contain conditions restricting the income of the tenants and the rent that can be charged. A property owner who obtained a permit with such conditions petitioned for a writ of mandate to remove the permit conditions as an unlawful taking of his property. He also sought to enjoin enforcement of the ordinance as having been preempted by state law. The trial court denied the petition on the ground that the property owner's facial attack on the ordinance was barred because it was not brought within 90 days of the ordinance's enactment or the effective date of the preemptive state statute. (§ 65009.) The Court of Appeal affirmed.

Our Supreme Court reversed insofar as the property owner challenged the conditions imposed on his property under the ordinance. The court described the county's decision to impose the conditions as an "adjudicatory decision." (*Travis v. County of Santa Cruz, supra*, 33 Cal.4th at p. 769.) The court stated: "[T]he decision by the County's zoning officials to issue Travis a second unit permit subject to rent and occupancy conditions, while it may have been legally compelled by the Ordinance, required more than a purely mechanical or arithmetic process on their part." (*Id.* at p. 770.) The court concluded the property owner's action was timely because it was brought within 90 days of the approval of the permit imposing the conditions. (*Id.* at p. 767.)

Our Supreme Court, however, affirmed that the property owner's facial attack on the ordinance as preempted by state law was barred by the statute of limitations. The court held that when it is claimed an existing ordinance is preempted by a later enacted state statute, the limitations period begins to run on the effective date of the assertedly preemptive statute. (*Travis v. County of Santa Cruz, supra*, 33 Cal.4th at p. 773.)

██  Here the Fishbacks' only claim is that the County's ordinance is facially invalid as having been preempted by a state statute. This is not an attack on an adjudicatory decision imposing conditions on the use of property. *Travis* held that the statute of limitations on a facial challenge to an existing ordinance as having been preempted begins to run on the effective date of a later enacted statute. It follows that here, the statute of limitations regarding a challenge to a later enacted ordinance as having been preempted by an existing statute began to run on the date the ordinance was enacted. The trial court correctly determined that the Fishbacks's challenge to the ordinance was barred by section 66499.37.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Coffee, J., and Perren, J., concurred.