Filed 4/5/18 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| 1901 FIRST STREET OWNER, LLC, | |
| Plaintiff and Appellant, | G054086 |
| v. | (Super. Ct. No. 30-2015-00803234) |
| TUSTIN UNIFIED SCHOOL DISTRICT, | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

It is ordered that the opinion filed herein on March 29, 2018, be modified as follows:

At the end of the last paragraph on page 5, delete footnote 3, which will require renumbering of all subsequent footnotes.

There is no change in the judgment.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.

Filed 3/29/18 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| 1901 FIRST STREET OWNER, LLC,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>TUSTIN UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | G054086<br><br>(Super. Ct. No. 30-2015-00803234)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Peter J. Wilson, Judge.  Affirmed.

Jackson Tidus, Michael L. Tidus, Gregory P. Regier and Nedda Mahrou for Plaintiff and Appellant.

Bowie, Arneson, Wiles & Giannone, Wendy H. Wiles, Jeffrey W. Frey; Atkinson, Andelson, Loya, Ruud & Romo, Wendy H. Wiles and Jeffrey W. Frey for Defendant and Respondent.

\*          \*          \*

Plaintiff 1901 First Street Owner, LLC (First Street), appeals from a judgment which interpreted the meaning and application of Government Code section 65995, subdivision (b)(1), in a manner favorable to defendant Tustin Unified School District (the District).[1] First Street is the developer of an apartment complex. The underlying dispute arose after the City of Santa Ana (the City) had calculated the square footage of the development for purposes of assessing a school impact fee. The District disputed the City's method of calculating the assessable space and filed an administrative appeal. Before that appeal was resolved, the City revised its calculation in the District's favor, prompting First Street to file an administrative appeal. First Street prevailed in its administrative appeal and subsequently filed the present lawsuit against the District, alleging various tort causes of action and seeking declaratory relief and a writ of mandate ordering the District to refund the excess school fees. The court dismissed the tort claims pursuant to an anti-SLAPP motion, which we affirmed in a separate appeal. (*1901 First Street Owner, LLC v. Tustin Unified School Dist.* (Nov. 9, 2017, G053201 [nonpub. opn.].) The case proceeded on the declaratory relief claim and writ petition, as well as a cross-complaint by the District for an administrative writ of mandate. The court found in favor of the District, and First Street appealed from the judgment.

The disputed issue boils down to whether the square footage of interior space outside the individual apartment units should be included in the calculation of school impact fees (e.g. interior hallways, storage rooms, mechanical rooms, fitness centers, lounges, etc.—we refer to this as interior common area). Section 65995, subdivision (b)(1), defines "[a]ssessable space" as "all of the square footage within the perimeter of a residential structure, not including any carport, covered or uncovered walkway, garage, overhang, patio, enclosed patio, detached accessory structure, or similar area." It requires the city building department to make that

---

[1] All further statutory references are to the Government Code unless otherwise stated.

2

calculation in accordance with its "standard practice . . . in calculating structural perimeters."

First Street makes three arguments on appeal.  First, it contends the "residential structure" is the apartment unit, and that various exclusions in the statute omit all interior common area.  Second, even if such contention is wrong, First Street argues the City's standard practice must govern, and the evidence shows the City's standard practice was to exclude interior common area.  Third, First Street had a vested right to develop the project, and it argues an implication of that right is that the City's method of calculating school impact fees could not be changed.  We reject these arguments and affirm the judgment.

## FACTS[2]

The underlying facts are essentially undisputed.  First Street is the developer of a residential project that includes a five-story apartment building.  Before

_____

[2] First Street has requested we take judicial notice of various documents it contends reflect the intent of the Legislature when it amended section 65995 in 1989. Most of these documents were not presented to either the City's hearing officer or the trial court.  The lone exception is the chaptered version of Assembly Bill No. 181 (1989-1990 Reg. Sess.), which, inter alia, amended section 65995.  (Stats. 1989, ch. 1209.) "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]  No exceptional circumstances exist that would justify deviating from that rule, either by taking judicial notice or exercising the power to take evidence under Code of Civil Procedure section 909." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  Moreover, many of the documents are dated *after* October 1, 1989, the date the Governor signed Assembly Bill No. 181, *supra*, and, thus, are not relevant to legislative intent at the time the measure was adopted. Other documents are expressions of personal opinion with no evidence the Legislature considered them, or are otherwise not helpful to the analysis.  Accordingly, we take judicial notice of the chaptered version of Assembly Bill 181, *supra*, and deny the requested judicial notice for the remainder of the documents.

obtaining building permits, First Street was required to pay a school impact fee to the District. (Ed. Code, § 17620, subd. (b).) To that end, First Street submitted a worksheet to the City containing its square footage totals. First Street calculated the square footage using a "net rentable" method, which was the City's standard practice at that time. This method calculated the square footage of the individual apartment units, but excluded everything else in the building. The City accepted First Street's calculation of 272,943 square feet of residential space and informed the District.

The District responded with a letter from its legal counsel objecting to the net rentable method. In particular, the District argued that method did not include "all of the square footage within the perimeter of a residential structure" pursuant to section 65995, subdivision (b)(1), and, as such, "is not permissible under the Government Code or Education Code." The City's attorney responded with a letter reaffirming that the net rentable method was its "standard practice" pursuant to section 65995.

This prompted the District to file an administrative appeal pursuant to Santa Ana Ordinance No. NS-2792, section 3-2(2) of the Santa Ana Municipal Code. Rather than contest the appeal, the City decided to abandon its net rentable method. The City's revised square footage calculation was based on the perimeter of the building and resulted in an increase of approximately 70,000 square feet, increasing the fee by $238,549.86. First Street, of course, objected to the change, arguing that any change in policy could not be retroactively applied to the development. When the City did not relent, First Street filed its own administrative appeal. In the meantime, First Street paid the increased fees under protest.

The administrative hearing officer found in favor of First Street, concluding that the City's standard practice of calculating net rentable space must govern. He did not address whether the City's net rentable method complied with section 65995 and ordered the District to refund the portion of the fees First Street had paid under protest.

4

The District refused to refund the fees, prompting First Street to file the present lawsuit. First Street's verified complaint/petition for writ of mandate asserted causes of action for declaratory relief, violation of the Mitigation Fee Act (§ 66000 et seq.), intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and interference with contractual relations. In addition to declaratory relief and damages, First Street sought a writ of mandate ordering the District to refund the excess fees. The District cross-petitioned for a writ of administrative mandate to order the City to set aside the decision of the administrative hearing officer. The District also filed an anti-SLAPP motion to dismiss the tortious interference claims that was granted by the court, which we affirmed in a separate appeal. (*1901 First Street Owner, LLC v. Tustin Unified School Dist.*, *supra*, G053201.)

The remaining causes of action proceeded to a bench trial; after which the court found in favor of the District. The court interpreted section 65995, subdivision (b)(1), as precluding the net rentable method the City had initially used. That method, the court commented, "entirely ignored the mandate of" section 65995, subdivision (b)(1). The court denied First Street's claims for relief and issued the writ of administrative mandate sought by the District. First Street appealed.[3]

---

[3] Although neither party raises the issue, we note that First Street's notice of appeal purports to be from a ruling on an anti-SLAPP motion. On the judicial council form, First Street did not check the box for an appeal from a judgment after a bench trial. However, the date of the appealed order is listed as September 12, 2016, which is the date the judgment on the merits was filed on the remaining causes of action. By contrast, the court's order on the anti-SLAPP motion was filed in December 2015. It appears First Street's counsel started from its initial notice of appeal on the anti-SLAPP motion and changed the date but forgot to switch the checked box from the anti-SLAPP appeal to an appeal following a judgment. Because "[t]he notice of appeal must be liberally construed" (Cal. Rules of Court, rule 8.100(a)(2)), we interpret the notice of appeal to be from the judgment after the bench trial, not from the anti-SLAPP order. However, we caution parties to take care in preparing a notice of appeal, as it can affect our jurisdiction to hear the appeal.

5

DISCUSSION

We begin with the central question of this appeal: Does "[a]ssessable space," as defined in section 65995, include interior common area? The interpretation of a statute is an issue we review de novo. (*Fishback v. County of Ventura* (2005) 133 Cal.App.4th 896, 902.) We conclude it does.

Education Code section 17620, subdivision (a)(1), authorizes a school district to levy a fee on new residential construction: "The governing board of any school district is authorized to levy a fee, charge, dedication, or other requirement against any construction within the boundaries of the district, for the purpose of funding the construction or reconstruction of school facilities, subject to any limitations set forth in Chapter 4.9 (commencing with Section 65995) of Division 1 of Title 7 of the Government Code."

Government Code section 65995, subdivision (b)(1), calculates the applicable fee as follows: "In the case of residential construction . . . one dollar and ninety-three cents ($1.93) per square foot of assessable space. 'Assessable space,' for this purpose, means all of the square footage within the perimeter of a residential structure, not including any carport, covered or uncovered walkway, garage, overhang, patio, enclosed patio, detached accessory structure, or similar area. The amount of the square footage within the perimeter of a residential structure shall be calculated by the building department of the city or county issuing the building permit, in accordance with the standard practice of that city or county in calculating structural perimeters."[4]

---

[4] Section 65995, subdivision (b)(3), authorizes the per square foot rate to be adjusted for inflation, as determined by the State Allocation Board. According to the parties, the rate in 2016 was $3.36 per square foot.

The definition of "assessable space" begins with the *perimeter* of a residential *structure*. If we were to stop there and consider only the plain language of the statute, interior common area clearly constitutes assessable space. The only way this interpretation could be avoided would be to conclude that residential "structure" refers to an individual apartment unit. But that would be an extremely strained interpretation of the word "structure." Moreover, the education fee applies to residential "construction" (§ 65995, subd. (b)(1)), and "construction" is defined as "new construction and reconstruction of existing *building* for residential [use] . . . ." (*Id.*, subd. (d), italics added.) Use of the word "building" cuts strongly against the notion that the "structure" is an individual apartment unit.

First Street attempts to recast the term "structure" by referring to section 65995.5, which provides an alternative method of calculating a school impact fee (that was not utilized here).[5] That method requires, among other things, the calculation of "the projected total square footage of assessable space of residential *units* anticipated to be constructed during the next five-year period." (*Id.*, subd. (c)(3), italics added.) "'Residential units' . . . means the development of single-family detached housing units, single-family attached housing units, manufactured homes and mobilehomes, . . . condominiums, and multifamily housing units, including apartments, residential hotels, . . . and stock cooperatives." (*Id.*, subd. (g).) First Street's argument is, essentially, that since the calculation in section 65995.5 focuses on individual apartment units, the calculation in section 65995 must likewise focus on individual units.

We see no reason to interpret those two statutes in tandem. They are alternative, independent methods of calculating a school-impact fee that utilize two very different terms: "units" versus "structure." And section 65995 calculates the fee based upon a fully developed project, whereas section 65995.5 calculates the fee based upon

_____

[5] The parties refer to the method under section 65995 as "Level I fees" and the method under section 65995.5 as "Level II fees."

7

anticipated future development. We express no opinion on the interpretation of "units" in section 65995.5. We simply disagree that the two statutes must be interpreted in tandem, and thus, for present purposes, it does not matter how the term "units" in section 65995.5 is interpreted.

First Street also contends that by including common area interior space in assessable space, apartment buildings would be assessed under a different standard than single-family homes. Thus, First Street argues, "In order for equal treatment to exist, Section 65995(b)(1) must be interpreted to exclude areas found outside of the apartment units themselves, just as the areas outside a single family detached home are not included in the assessable space determination." We disagree. Apartment structures and single-family homes are treated equally. All interior space is assessable. It does not matter that some interior spaces are individually owned, whereas others are common area. All interior space is treated the same.

Next, First Street contends the court erred by failing to account for the exclusions in section 65995, subdivision (b)(1), which include "any carport, covered or uncovered walkway, garage, overhang, patio, enclosed patio, detached accessory structure, or similar area." But First Street makes no attempt to specify which exclusions apply to which areas in this case, much less how much square footage should have been excluded. First Street argues only that the list of exclusions are not necessarily exterior to a structure—a conclusion which, even if true, does not get us to a resolution in this case. Notably absent from the list of exclusions under the statute are interior common areas sometimes found (and in some cases usually found) in large apartment structures, such as mechanical rooms, storage rooms, fitness centers, common lounge areas, recreation rooms, indoor pools, elevator shafts, etc.

So far as we can determine from the record, the only exclusion even potentially applicable here is walkways, which, arguably, could include an interior hallway (although First Street does not even make that argument explicitly).

8

In arguing walkways are exterior to a structure, the District cites *Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1082. That case cited Webster's Third New International Dictionary to define walkway as "'a path for pedestrians esp[ecially] in a garden or park.'" First Street counters that the Merriam-Webster Dictionary online has a more general definition of walkway: "a passage for walking." We note that Webster's Third New International Dictionary contains four definitions, one of which is, "a walk connecting the entrance door of a house with a sidewalk, street, or road . . . ." (Webster's 3d New Inernat. Dict. (2002) p. 2572.)

Plainly, the term "walkway" can be used in different ways, but we conclude the statute here uses it in the sense of an external walking path. We reach this conclusion primarily based on the principle of statutory construction *noscitur a soclis*, i.e., where a word is used in a list, its meaning can be demonstrated by the other items in the list. (*See People v. Drennan* (2000) 84 Cal.App.4th 1349, 1355 ["The rule of statutory construction, *noscitur a sociis*, a word takes meaning from the company it keeps, is useful here. 'A word of uncertain meaning may be known from its associates and its meaning "enlarged or restrained by reference to the object of the whole clause in which it is used"'"].) Aside from walkways, the other items in the list—carport, garage, overhang, patio, enclosed patio, and detached accessory structure—are typically located at or near the periphery of a residential structure. In other words, they could arguably be included within the perimeter. The Legislature, therefore, felt compelled to specify that it did not mean to include those areas within assessable space. Accordingly, we conclude a covered or uncovered walkway, as used in section 65995, subdivision (b)(1), refers to an external walkway, not an interior hallway. Any "similar area" is likewise on the periphery of the residential structure and does not include an interior hallway.

First Street's next argument is that the City's standard practice of utilizing a net rentable method must govern here. Presumably, First Street's position is that the standard practice must govern even if that practice does not comply with section 65995's

9

definition of assessable space, though First Street does not phrase it that way. First Street relies on the following sentence in section 65995, subdivision (b)(1): "The amount of the square footage within the perimeter of a residential structure shall be calculated by the building department of the city or county issuing the building permit, in accordance with the standard practice of that city or county in calculating structural perimeters."

The flaw in First Street's reasoning is apparent from the plain language of the statute. The "standard practice" referred to in section 65995, subdivision (b)(1), is specifically the standard practice of calculating the square footage within the *perimeter* of a residential *structure*. A standard practice of calculating something else does not qualify. And as we determined above, that is what happened here.

First Street's final argument is that the City's decision to change its method of calculating assessable space violated its vested rights. When, as here, a local agency approves a vesting tentative map (§ 66498.1, subd. (b)), or enters into a development agreement (§§ 65865, 65866), the builder is entitled to proceed on the project under the local rules, regulations, and ordinances in effect at the time of the approval. First Street contends the City's decision to change its method of calculating assessable space violated its rights.

First Street's argument is met by section 66498.6, subdivision (b), which provides that the approval of a tentative vesting map "does not grant local agencies the option to disregard any state or federal laws, regulations, or policies." Additionally, the development agreement specifically reserved to the City the power to enact rules after the agreement's effective date that "are required to comply with mandates under state and federal laws, rules and regulations (whether enacted previous or subsequent to the Effective Date)." As we stated above, the City's standard practice was not in compliance with section 65995, subdivision (b)(1), and, thus, the City was entitled to adopt a new rule implementing the statutory mandate.

DISPOSITION


The judgment is affirmed.  The District shall recover its costs incurred on appeal.[6]


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

---

[6] First Street contends that we should remand the case because, even under the City's revised calculation, "there is no evidence that . . . the City properly excluded all areas required under the statute . . . ."  However, we do not remand cases on the mere possibility of error.  First Street was required to affirmatively demonstrate error, and it did not point to any evidence in the record suggesting the City's revised calculations failed to exclude areas required by section 65995.