Filed 8/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RUBEN LONA, | |
| Plaintiff and Appellant, | G058257 |
| v. | (Super. Ct. No. 30-2018-01020378) |
| CITY OF FULLERTON POLICE DEPARTMENT, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Sherri L. Honer, Judge. Affirmed.

The Connie Rice Institute for Urban Peace and Sean Garcia-Leys for Plaintiff and Appellant.

Peter Bibring and Melanie Penny Ochoa for American Civil Liberties Union of Southern California as Amicus Curiae on behalf of Plaintiff and Appellant.

Jones & Mayer and Gregory P. Palmer for Defendant and Respondent.

\*      \*      \*

Ruben Lona is an admitted former member of a criminal street gang who claims he left his gang in 2016.  In 2018, invoking the procedure in Penal Code[1] section 186.34, Lona asked the City of Fullerton Police Department (the Department) to remove his name from a shared gang database that lists him as a suspected gang member or associate.  The Department denied his request; Lona then filed a petition for removal pursuant to section 186.35.  The trial court denied his petition, based in large part on Lona's sworn statements that he left the gang only three years earlier, still possesses attire that violates the gang injunction applicable to his former gang, and still bears gang tattoos.

Lona appealed, asserting the trial court erred by admitting the Department's 2018 denial letter and by denying him an opportunity to respond to the letter's contents.  He further contends the Department did not prove his "active gang membership" by clear and convincing evidence.  For the reasons set forth below, we affirm.

**FACTS**

1.      *The Statutory Framework for Seeking Removal from a Shared Gang*
        *Database*

Before turning to the proceedings below, we review the applicable statutory framework.  Law enforcement agencies create and often share with other agencies databases designating certain persons as suspected gang members or associates.  (See § 186.34, subd. (a).)  These shared gang databases allow law enforcement to identify persons as gang members and act accordingly to protect themselves, the suspected gang member, and the public.  To address legitimate concerns that the shared gang databases

---

[1]      All further statutory references are to this code unless otherwise noted.

2

are sometimes inaccurate or overinclusive, the Legislature enacted sections 186.34 and 186.35, which allows persons to seek removal from such databases if they are no longer active gang members, affiliates, or associates.

Pursuant to these statutes, the person must first submit a written request to a law enforcement agency inquiring whether he or she has been designated as a suspected gang member, associate, or affiliate in a shared gang database accessible by that agency, and, if so, the basis for the designation. (§ 186.34, subd. (d)(1).) Within 30 days of receiving the request, the agency must respond in writing and provide the requested information, unless doing so would compromise an active criminal investigation. (*Id.*, subd. (d)(2), (3).)

The person may then "submit written documentation to the local law enforcement agency contesting the designation." (§ 186.34, subd. (e).) If, after reviewing the documentation, the agency determines the person is *not* a gang member, associate, or affiliate, the agency must remove the person from the shared gang database. (*Ibid*.) If, however, the agency denies the request for removal, it must provide a notice of determination stating the reason for its denial; the agency need not disclose any information protected under Evidence Code sections 1040 or 1041 or Government Code section 6254. (*Id.*, subd. (e), (f).) A request for removal is deemed denied if the agency does not provide a verification of its decision within 30 days. (*Id.*, subd. (e).)

If the law enforcement agency denies the removal request, the person may petition the superior court to review the denial and order the agency to remove him or her from the shared gang database. (§§ 186.34, subd. (e), 186.35, subd. (a).) Such a proceeding is a civil proceeding. (§ 186.35, subd. (b).) The agency bears the burden of "establish[ing] the person's active gang membership, associate status, or affiliate status by clear and convincing evidence." (*Id.*, subd. (d).)[2]

---

[2] The statute does not define "gang membership," "associate status," or "affiliate status."

The petitioner must attach the law enforcement agency's written verification of its decision denying the removal request to the petition.[3] (Cal. Rules of Court, rule 3.2300 (CRC 3.2300), subd. (d)(1)(B)(i).) The petitioner may also include in the petition argument addressing why the agency cannot "establish by clear and convincing evidence the active gang membership, associate status, or affiliate status of" the petitioner. (CRC 3.2300(f)(1)(A).)

Within 15 days of being served with the petition, the agency must file with the court (1) its statement of the basis for its designation under section 186.34, subdivision (d), and (2) the documentation the person provided to the agency contesting the designation under section 186.34, subdivision (e). (CRC 3.2300(e)(1)(A)-(B); CRC 3.2300(e)(2).) These two materials constitute "the record" in the case. (See § 186.35, subd. (c) ["The evidentiary record for the court's determination of the petition shall be limited to the agency's statement of the basis of its designation made pursuant to subdivision (c) or (d) of Section 186.34, and the documentation provided to the agency by the person contesting the designation pursuant to subdivision (e) of Section 186.34"]; CRC 3.2300(e)(2) ["record is limited to the documents required by Penal Code section 186.35(c)"].)

Within 15 days of the record being perfected, either party may file additional argument addressing why, based on that record, the law enforcement agency did or did not "establish by clear and convincing evidence the active gang membership, associate status, or affiliate status of" the petitioner. (CRC 3.2300(f)(1)(A)-(B), (f)(2).) Additional documents may not be attached to either party's written argument, and the arguments must not refer to evidence outside the record. (CRC 3.2330(f)(1)(D).)

---

[3] Or, if the law enforcement agency did not timely provide a written verification responding to the person's request, the petition must include a copy of the request and the written documentation that the petitioner submitted to the agency contesting the designation. (CRC 3.2300(d)(1)(B)(ii).)

The trial court reviews the record de novo. If the court finds the agency failed to establish the petitioner's active gang membership, associate status, or affiliate status by clear and convincing evidence, the court shall order the agency to remove the petitioner from the shared gang database. (§ 186.35, subd. (d); CRC 3.2300(h).)

2.  *Lona's Removal Request and Petition*

Against that statutory backdrop, we turn to the proceedings below. It is undisputed that Fullerton Tokers Town is a criminal street gang. According to Lona, he was "involved" with the Fullerton Tokers Town gang when he was younger, was convicted of gang crimes and served time in prison for those crimes from 2015 to 2016, and had to register as a gang member with the police. From 2011 to 2018, he was also subject to the *People v. Fullerton Tokers Town* gang injunction, which prohibits alleged gang members from wearing California State University Fullerton (CSUF) clothing and from being out in public at night. Lona was arrested for violating the injunction in 2013 and again in 2018.

Lona asserts he is no longer an active gang member, affiliate, or associate. According to Lona, he ended his involvement with the gang when he was released from prison in 2016, because he wants to be a good father to his two young children who were born in 2012 and 2016.

Lona admits he still wears CSUF clothing, not because he supports the gang, but because he is a fan of the university's soccer team and because he is from Fullerton. He also admits he still bears his gang tattoos (which he got when he was in the gang), still regularly associates with other former gang members whom he considers part of his family, and still lives in the neighborhood where the gang is active.

According to Lona, since leaving the gang, he has successfully completed parole. He has also completed life skills training, employment readiness training, and a construction training program, and he has obtained full-time construction work. He

5

enjoys spending quality time with his family, and he hopes to "be a positive role model for [his] kids" and "provide a better life" for them and his long-time girlfriend.

In early 2017, Lona, through counsel, wrote to the Department to inquire whether his name and information appeared in a shared gang database and, if so, to inquire about the basis for his designation as a gang member. (See § 186.34, subd. (d)(1) [authorizing such requests].) The Department responded with a single-page letter which stated Lona meets the criteria for being entered into its shared gang database because Lona "admits to being a gang member, in a non-custodial situation," "is wearing gang attire," "has been seen displaying gang hand signs or symbols," "has gang tattoos," "frequents gang areas," "openly associates with documented gang members," and "has been arrested, alone or with known gang members, for a crime consistent with usual gang activity." (See § 186.34, subd. (d)(2) [requiring agency to provide written response stating basis for designation as suspected gang member, associate, or affiliate].)

The following week, through counsel, Lona sent another letter to the Department in which he asserted its response "provided no evidence to support these alleged bases." The Department responded with a letter that was nearly identical to its first letter, except that it added, "In review of the Department's computerized shared gang database there were 23 contacts that met the required criteria." The Department provided no further explanation or supporting evidence.

In January 2018, police pulled Lona over, found a CSUF beanie and a knife in his car, and arrested him for violating the *People v. Fullerton Tokers Town* gang injunction.[4] The Orange County District Attorney did not file any charges related to this incident, however, and in May 2018, removed Lona from the gang injunction enforcement list pursuant to a request by Lona's counsel.

---

[4] According to the Department, the knife was an illegal switch blade. Lona contends it was a legal folding box cutter.

In June 2018, Lona's counsel sent another letter to the Department requesting the removal of Lona's name and information from the shared gang database. The letter acknowledged Lona was formerly involved with the gang and had been convicted of gang related crimes, but asserted he no longer has any connection to the gang. It also argued that Lona's strong family ties, education, work history, his successful completion of parole, and the Orange County District Attorney's decision to remove him from the enforcement list for the gang injunction were persuasive evidence he had left the gang. Lona included a five-page declaration (the contents of which we summarize above) and over 70 pages of other documentation in support of his removal request, including vocational school certifications, a paycheck stub, a certificate of discharge from parole, and the letter from the Orange County District Attorney confirming he is no longer subject to the gang injunction. The documentation also included a lengthy declaration by James Diego Vigil, Ph.D., a retired Professor of Criminology, Law & Society at the University of California, Irvine, who stated that "[a] lapse of evidence of criminal behavior for more than three years is an indication that gang membership has ceased." (See § 186.34, subd. (e) [person "may submit written documentation to the local law enforcement agency contesting the designation"].)

A few weeks later, the Department sent a letter to Lona's counsel denying his removal request (the June 2018 denial letter). The letter concluded, "Lona is still an active participant/associate of the Fullerton Tokers Town gang" and thus "will not be removed from any or all of our law enforcement gang data bases." The letter cited three previously undisclosed reasons for the denial: (1) Lona's January 2018 arrest for possessing a switch blade knife in his vehicle and violating the terms of the gang injunction; (2) the October 2016 discovery of photographs of Lona and other Fullerton Tokers Town gang members displaying gang hand signs; and (3) the discovery in December 2016 of letters addressed to Lona from Fullerton Tokers Town gang members.

(See § 186.34, subd. (e) ["If the law enforcement agency denies the request for removal, the notice of its determination shall state the reason for the denial."].)

Lona then filed a petition in the trial court pursuant to section 186.35, seeking review of the Department's denial of his removal request. He attached a copy of the Department's June 2018 denial letter, as required by CRC 3.2300(d)(1)(B)(i). The Department did not timely file or serve the administrative "record" (i.e., the agency's original statement of the basis for the designation and any documentation the petitioner provided to the agency in response) as required by the Rules of Court. (See § 186.35, subd. (c); CRC 3.2300(e)(1)(A); CRC 3.2300(e)(2).) Instead, it filed a purported "opposition" to Lona's petition and lodged over 60 pages of exhibits in support of its opposition.[5] Weeks later, the Department filed a notice of lodging of supplemental record which included its two 2017 response letters, Lona's June 2018 removal request and supporting documentation, and the Department's June 2018 denial letter. (See § 186.35, subd. (c); CRC 3.2300(e)(1)(A); CRC 3.2300(e)(2).)

Lona filed a written argument in support of his petition. (See CRC 3.2300(f)(1)(A), (f)(2).) He objected to the admission of any of the Department's evidence other than the two 2017 response letters, and argued the Department failed to meet its burden of proof.

After considering Lona's evidentiary objections, the trial court excluded the Department's "opposition," finding it was not admissible under section 186.35. However, the court admitted the Department's two 2017 response letters, Lona's June 2018 removal request and supporting documentation, and the Department's June 2018 denial letter.

During oral argument, Lona's counsel argued the Department had failed to meet its burden of establishing current, active gang membership by clear and convincing

---

[5] This filing was not permitted under section 186.35 or CRC 3.2300.

8

evidence. Counsel also argued Lona's family involvement and accomplishments over the past three years showed he had ended his gang involvement. Lona's counsel also attempted to highlight certain discrepancies between the factual assertions in the Department's June 2018 denial letter and the evidence attached to the Department's "opposition." Because the trial court had excluded the "opposition" in response to Lona's objection, it declined to hear argument that the discrepancies between these submissions undercut the denial letter's reliability.

After considering the administrative record, Lona's written argument, and the oral argument it did entertain, the trial court denied Lona's petition, finding the Department had met its burden "by clear and convincing evidence." Critically, the court noted that Lona himself admitted he had left the gang only three years earlier, continued to possess attire that violated the gang injunction order, and still bore his gang tattoos. The court was unpersuaded by Lona's claim that his education and family life evidenced the end of his gang participation. The court observed Lona had perhaps filed his petition prematurely, and if he had another year without gang activity, the result might be different. Lona appealed.

## DISCUSSION

1.     *The Admission of the Department's June 2018 Denial Letter*

Lona first contends the trial court erred in admitting the Department's June 2018 denial letter, asserting the court incorrectly applied the evidentiary limitation under section 186.35, subdivision (c). Although we generally review a lower court's ruling on the admissibility of evidence for abuse of discretion (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447), we review Lona's statutory construction argument de novo. (*1901 First Street Owner, LLC v. Tustin Unified School Dist.* (2018) 21 Cal.App.5th 1186, 1192.)

9

To understand the evidentiary record rule outlined in section 186.35, subdivision (c), we must review section 186.34, which creates a four-step process for exchanging information before a person can file a section 186.35 petition: (1) the person sends a written request inquiring whether he or she is listed in a shared gang database and the basis for the designation (§ 186.34, subd. (d)(1)); (2) the agency responds in writing with the requested information (*id.*, subd. (d)(2)-(3)); (3) the person submits written documentation to the agency contesting the designation (*id.*, subd. (e)); and (4) if denying the person's removal request, the agency sends a "notice of its determination" that "state[s] the reason for the denial" (*ibid.*). If the person files a petition for review of that denial, section 186.35, subsection (c), mandates that "[t]he evidentiary record for the court's determination of the petition *shall be limited* to the agency's statement of the basis of its designation made pursuant to subdivision . . . (d) of Section 186.34, and the documentation provided to the agency by the person contesting the designation pursuant to subdivision (e) of Section 186.34." (Italics added.) In other words, the evidentiary record should include the documents generated in steps 2 and 3, but not step 4.

Lona therefore contends the trial court should have considered *only* the Department's two 2017 response letters (which the Department provided under section 186.34, subdivision (d)(2); step 2) and Lona's June 2018 removal request letter and supporting documentation (which Lona provided under section 186.34, subdivision (e); step 3); it should *not* have admitted the Department's June 2018 denial letter (which the Department appears to have provided under section 186.34, subdivision (e); step 4).[6]

---

[6] The Department suggests its June 2018 denial letter was actually part of its response made pursuant to section 186.34, subdivision (d)(2), explaining the basis for Lona's designation as a suspected gang member in a shared gang database. We disagree. The June 2018 denial letter expressly states it was sent in response to Lona's letter contesting his designation as a suspected gang member; it notifies Lona that he "will not be removed from any or all of our law enforcement gang databases" and explains why.

10

Lona is correct that a law enforcement agency's notice of determination denying a removal request under section 186.34, subdivision (e), is not specifically identified as part of the "record" in section 186.35, subdivision (c). Nonetheless, the Rules of Court and other parts of section 186.35 suggest the trial court may consider the agency's notice of determination in ruling on a petition. First, section 186.35, subdivision (a), states the petitioner may "petition the court to *review the law enforcement agency's denial of the request for removal* and to order the law enforcement agency to remove the person from the shared gang database." (§ 186.35, subd. (a), italics added.) Second, the Rules of Court expressly require the petitioner to attach to his petition the agency's written verification of its decision denying the person's request under section 186.34, subdivision (e) (step 4). (CRC 3.2300(d)(1)(B)(i).) Read together, we believe these provisions permit the trial court to review and consider the agency's denial letter when ruling on the petition, notwithstanding the language in section 186.35, subdivision (c).[7]

Ultimately, however, we need not decide here whether the trial court erred in admitting the Department's June 2018 denial letter, because any potential error was harmless. There is no indication the court relied on that letter in denying Lona's petition. It is apparent to us the court relied primarily on the statements contained in the declaration Lona provided to the Department as part of his June 2018 removal request. The court noted that Lona, by his own admission, had left the gang only three years earlier, was still in possession of attire that violates the gang injunction order (i.e., the CSUF beanie), and still had gang tattoos. As we explain below, these admissions

This was plainly sent pursuant to section 186.34, subdivision (e) ("If the law enforcement agency denies the request for removal, the notice of its determination shall state the reason for the denial"), not under section 186.34, subdivision (d)(2).

[7] In light of the inconsistent language in sections 186.34 and 186.35, we invite the Legislature to clarify its intent on this issue.

11

constitute substantial evidence of Lona's status as an active gang "associate" or "affiliate," and thus support the trial court's denial of his petition. Consequently, in our view, any error in the court's admission of the Department's June 2018 letter was harmless. (See *Ajaxo, Inc. v. E\*Trade Financial Corporation* (2020) 48 Cal.App.5th 129, 185 ["A judgment of the trial court may not be reversed for the erroneous admission or exclusion of evidence unless the error was prejudicial, resulting in a miscarriage of justice"].)

2.      *Establishing "Active Gang Membership, Associate Status, or Affiliate Status"*

That brings us to the next question of statutory construction. Lona and amicus curiae contend the Department was required to prove Lona is an active gang member to prevail below; they then argue the Department did not establish Lona's active gang membership by clear and convincing evidence.

We review the trial court's finding that the Department established Lona's active gang membership, associate status, or affiliate status by clear and convincing evidence by determining "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.) In making that determination, we "view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996)

Applying those standards here, we agree there was not clear and convincing evidence that Lona was currently an active gang member. However, that does not resolve the issue, as we disagree with Lona's and amicus curiae's interpretation of section 186.35. We conclude the Department met its burden by demonstrating that Lona remains an active gang associate or affiliate.

12

In a section 186.35 proceeding, the law enforcement agency bears the burden of "establish[ing] the person's active gang membership, associate status, *or* affiliate status by clear and convincing evidence." (§ 186.35, subd. (d), italics added.) Interpreting the plain meaning of this statute, with its disjunctive language, there are three different ways for the agency to meet its burden of proof: by establishing active "gang membership," by establishing active "associate status," *or* by establishing active "affiliate status."[8] Thus, clear and convincing evidence of active gang membership is not required where there is clear and convincing evidence of active associate status or active affiliate status.

Lona contends the terms "associate status" and "affiliate status" are synonymous with "active gang membership." We disagree. This reading would deprive the terms "associate" and "affiliate" of significance, "contrary to the principle of statutory construction that interpretations which render any part of a statute superfluous are to be avoided." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1207.) If the Legislature had intended active gang membership to be the exclusive basis for keeping a person in a shared gang database, it would have required the agency to "establish the person's active gang membership by clear and convincing evidence." It

---

[8]    We believe the word "active" in the phrase "active gang membership, associate status, or affiliate status" modifies all three levels of gang involvement included in the statute: "gang membership," "associate status," *and* "affiliate status." "Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears. For example, if a writer were to say, 'The orphanage relies on donors in the community to supply the children with used shirts, pants, dresses, and shoes,' the reader expects the adjective 'used' to modify each element in the series of nouns, 'shirts,' 'pants,' 'dresses,' and 'shoes.' The reader does not expect the writer to have meant that donors supply 'used shirts,' but supply 'new' articles of the other types of clothing." (*Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548, 554.)

13

did not choose to do so. Instead the Legislature included the words "associate status, or affiliate status" in section 186.35, subdivision (d).

Section 186.35 does not define the terms "gang member," "associate," or "affiliate." However, a common sense reading of the statute suggests that an active gang member is someone who has formally become a member of the gang (having been jumped in or otherwise), while an affiliate or an associate is someone who may be less formally linked to the gang. Absent a statutory definition of these words, they must be interpreted using their ordinary, everyday meaning, and determining whether an individual falls into any of the three categories becomes a question of fact.

In interpreting the statute this way, we neither ignore nor downplay the fact that California's shared gang databases may be inaccurate or overinclusive. To be clear, these databases should never be used to overpolice any community, including California's Black or Latino communities. As the use of the word "active" suggests, mere *passive* or *nominal* association or affiliation with a gang does *not* justify retaining someone in a shared gang database.

That said, when a law enforcement agency establishes active gang "associate status" or active gang "affiliate status" by clear and convincing evidence, it has met its burden of proof under section 186.35. The Department did so here by relying on Lona's own declaration, in which he admitted he left the gang only three years earlier, retains his prohibited CSUF attire, and still has gang tattoos. These admissions constitute substantial evidence from which a reasonable fact finder could have found it highly probable Lona is an active "associate" or "affiliate" of the gang. Accordingly, the trial court did not err in finding the Department met its burden.

3. *Due Process*

Lona next contends the trial court violated his right to due process by denying him an opportunity to respond to and introduce evidence to rebut the Department's June 2018 denial letter. According to Lona, by denying him the right to

14

present evidence to support his position, the court committed structural error that is reversible per se. (See *Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1114 (*Gordon*) ["when a trial court erroneously denies *all* evidence relating to a claim, . . . the error is reversible per se because it deprives the party offering the evidence of a fair hearing"].)

To fully understand Lona's due process argument we must revisit the parties' prepetition correspondence and section 186.35, subdivision (c), which limits the contents of the evidentiary record in a petition for removal. Under this provision, the administrative record is "limited to the agency's statement of the basis of its designation made pursuant to subdivision (c) or (d) of Section 186.34, and the documentation provided to the agency by the person contesting the designation pursuant to subdivision (e) of Section 186.34." (§ 186.35, subd. (c).) The record should not include any correspondence exchanged after that.

As noted, the Department's June 2018 denial letter mentioned three previously undisclosed reasons for Lona's inclusion in the database: (1) his January 2018 arrest for possessing a switch blade knife in his vehicle and violating the terms of the gang injunction; (2) the October 2016 discovery of photographs of Lona and other Fullerton Tokers Town gang members displaying gang hand signs; and (3) the December 2016 discovery of letters addressed to Lona from Fullerton Tokers Town gang members. Lona never had a chance to dispute the accuracy of these assertions or provide rebuttal documentation, either in his letters to the Department under section 186.34 or in his written argument to the trial court, because the Department had not mentioned these matters in its 2017 denial letters under section 186.34, subdivision (d).[9] By the time the Department raised these matters for the first time in its June 2018 denial letter (sent under

---

[9] Of course, the Department could not have mentioned Lona's January 2018 arrest in its 2017 denial letters because the arrest had not yet happened.

section 186.34, subdivision (e)), the administrative record was already closed. And because a petitioner's written argument in support of the petition may not refer to evidence not in the administrative record (CRC 3.2330(f)(1)(D)), Lona was barred from addressing the matters outlined in the June 2018 denial letter in his written argument to the court.

Lona attempted, without success, to have the Department's June 2018 denial letter excluded. At oral argument on the petition, after the trial court excluded the Department's "opposition" but admitted its June 2018 denial letter, Lona's counsel attempted to highlight some discrepancies and inaccuracies in the June 2018 denial letter by referring to exhibits attached to the Department's "opposition." Because the court had excluded the "opposition," however, it would not hear argument that the discrepancies between these submissions undercut the June 2018 denial letter's reliability. According to Lona, this violated his due process rights.

On this record, we find no due process violation. It was Lona who argued for the exclusion of the Department's "opposition." The court provided him the relief he requested. He therefore cannot complain that the trial court would not let him reference that excluded evidence at oral argument. Moreover, Lona was not denied the opportunity to present any evidence whatsoever in support of his petition. He was denied only the opportunity to address the three previously undisclosed matters described in the June 2018 denial letter.

"The erroneous denial of some but not all evidence relating to a claim [citations] differs from the erroneous denial of all evidence relating to a claim, or essential expert testimony without which a claim cannot be proven [citations]. In the former situation, the appellant must show actual prejudice; in the latter situation, the error is reversible per se." (*Gordon, supra,* 170 Cal.App.4th at p. 1115.)

This record does not demonstrate that Lona suffered any actual prejudice. Although the court did rely on the fact that Lona is still in possession of attire that

16

violates the gang injunction order, that information was included in Lona's own sworn declaration in which he said, "[i]n 2018, I was pulled over with a Cal State Fullerton beanie in the car." We find no structural error.

4. *Additional Matters*

On a final note, we are mindful of Lona's actions to date, and we commend his recent efforts to advance his career and support his family. We join in the trial court's observation that Lona perhaps filed his petition prematurely. Should he challenge his inclusion in a shared gang database in the future, if he maintains the current trajectory of his life, Lona may fairly hope for a better result.

**DISPOSITION**

The trial court's order is affirmed. In the interests of justice, each party shall bear its own costs on appeal.


GOETHALS, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.

17